Ruffin. C. J.
 

 The bill states, that the plaintiff was indebted to one Stancell, in the sum of $50,69 on a Justice’s judgment, rendered April 1st, 1843, and that execution im" mediately issued, and the constable seized a negro girl* Irena; That the plaintiff was also indebted to Henry De-berry in a further sum, which made, with the former debt, interest and costs, the sum of $80,21, on the 10th of April, 1843 ; That the plaintiff was unable to pay the judgment without having his slave sacrificed at execution sale, and, to avoid that, he applied to Deberry to lend him money to pay the constable, and Deberry agreed to take up the execution, if the plaintiff would convey the slave to him to secure that sum, and also the debt he then owed Deberry; and that it was finally agreed between them, that, in order to secure those sums to Deberry, and also to raise them in convenient time, and without a sacrifice, the plaintiff should place the slave in the possession of Deberry, with authority to sell her as soon as he could do so advantageously : That Deberry was a competent man of business, in good circumstances, and that the plaintiff had great confidence in his integrity and disposition to deal fairly with him; That Debei'ry advanced the money, and prepared a bill of sale for the girl, which was absolute on its face, and was recommended by him, because it would enable him the more easily to make a private sale of the girl, and convey her;'And that the plaintiff, from confidence in Deberry, and ignorant of the effect of such instruments, executed the bill of sale on the 10th of April, 1843, and Deberry promised that he would sell the girl as soon as he could, for a fair price, and after satisfying his debt, pay the surplus to the plaintiff, or would • allow him to redeem, if he
 
 *194
 
 could, before such sale. The bill'avers, that the deed was intended by both parties as a security, merely, for the debt of $80,21, and interest thereon, and that it was
 
 made in
 
 that form, and the girl taken into Deberry’s possession, for the reason that Deberry would thereby be better able to make sale of her. It states further, that the girl was 8 or 10 years old, and that the plaintiff was offered for her considerably more than $80,21 and refused it, and that she was worth $200, or upwards; That the plaintiff subsequently gave an order on Deberry for money on account of the girl, which he declined advancing, because he had •not made sale of her; and that about a year afterwards» 'Deberry, wishing to keep the girl as his own absolute property, instead of selling her, called on two persons to set a value on her, as a price to be allowed by him to the plaintiff for her, and they fixed the value then at $250, which he said he Was whiling to give, but that he died soon after-wards, without anything further having been done. He left a will, and his executor divided his slaves among his children, and this girl was included in the division. The bill was filed in May, 1847, against the executor and legatees, and prays for an account and redemption.
 

 The executor answers, that he has no knowledge on the subject, except that he found the bill of sale among the testator’s paper’s, and the slave among his negroes at his deathf in October, 1844. He admits that the plaintiff claimed from him an allowance of the excess in value above the consideration of $80,21, mentioned in the bill of sale, and stated the ground of the demand as set forth in the bill, and that he declined making any, because the deed was absolute, and he had no personal knowledge of the matter. He states, that two years having elapsed from his administration, he distributed the property among the testator’s nine legatees in December, 1846, and that this slave fell
 
 *195
 
 into the lot of six infant children, valued at §1400, and was delivered to their mother and guardian, who duly gave a refunding bond.
 

 The answer of the children states, that they have no knowledge of their own of the terms on which their father got the slave from the plaintiff, and therefore, they can neither admit nor deny the allegations in the bill. It further states, that in their father’s last illness, he sent for the plaintiff, and he came and staid all night, and that they believe the plaintiff then received full compensation for the slave; for, although they had been unable to find among their father’s papers any memorandum of a settlement, as they had hoped to do, yet, they say, that when the plaintiff went away, their father said, “ thank God, I am clear of Richard Moore,” — the plaintiff.
 

 The evidence is that Deberry was in easy circumstances, and that Moore owned a negro woman and her children, who were the girl Irene, and two or three other small ones; that he was indebted to Deberry in a bond for §200, given in March, 1839, and payable one day after date; That, on the 1st of April, 1843, Deberry, who was a magistrate, gave the judgment for Stancell, and issued the execution, and the constable, one Long, seized the girl and carried her to his house ; That a credit for $224,65 is entered, in the hand-writing of Deberry, as of the 5th of April, 1843, on Moore’s bond to Deberry, but how the payment was made, does not appear — and that the bond has the word, “Paid,” written across the face, but without any explanation as to the time it was written or by whom, or how the payment was made. The bill of sale is dated the 10th of April, 1843, and purports to have been attested by one Lemuel Deberry, but has never been proved nor registered. That person is examined as a witness for the defendants, and he states, that Moore came to Deberry’s and offered
 
 *196
 
 to sell the girl to Deberry, and the latter refused to buy, but proposed to lend Moore the money to pay the execution Long had, and release the negro, if Moore would give a deed of trust for her to secure the same, and also what was then due to Deberry, and that Moore refused to give a deed of trust; and that the next day the witness, Moore, and Deberry, went to Long’s, and Moore got the girl and delivered her to Deberry ; and that Deberry told the witness he had purchased the girl, and paid $180 for her. Long deposes that, while he had the said girl, he offered the plaintiff $100 for her, and that another man offered him $150 for her, which he refused; and that Deberry paid him for Moore about $54, in discharge of the execution, Another witness deposes that Moore, being unwell, and not able to go to June Court, 1843, gave an order on Deberry to pay a sum of money to a man at Court, and that, upon its being made known to Deberry, he asked why Moore did not come himself, and, when informed of the cause, he said he could not pay any money then, as he had not sold the little negro yet, but was waiting to get a higher price, as he thought she was worth considerably more than Moore had authorised him to take for her. And another witness states, that in the last of the year 1843, as he thinks, Deberry called on him and another neighbor, as judges of the value of ne-groes, to set a value on the girl Irena, stating to them as the reason, that he had advanced about $80 for Moore, and taken a firm bill of sale, to secure the money, with the understanding between them, that he should sell the girl and pay himself the debt of $S0, and pay the residue of the price to Moore ; but that his wife was so well pleased with the girl, that he had concluded to have her valued and offer Moore the excess of the value, and keep the girl for himself: and that those two persons examined the girl, and
 
 *197
 
 valued her at $250, and Deberry seemed to be satisfied therewith.
 

 The principle, on which deeds, absolute on their face, are sometimes held to be but securities, has so often been the subject of discussion in the Court, that it is unnecessary to go over the reasoning again. The grounds, on which it rests, are summed up in the late case of
 
 Blackwell
 
 v
 
 Overby,
 
 6 Ire. Eq. 38, as accurately, perhaps, as it is in the power of the Court to do it; and in that case and the still more recent one of
 
 Kemp
 
 v
 
 Earp,
 
 7 Ire. Eq 167, it was acted on by relieving against such deeds. The case under consideration presents, as it seems to the Court, facts and circumstances
 
 dehors,
 
 which leave no doubt, that this instrument, as far as the interest of the apparent vendee was involved, was originally intended as a security merely for the sum mentioned in it, as the consideration; and that the possession of the slave was delivered to Mr. Deberry, and the deed put into the form of an absolute conveyance, for the purpose, simply, of vesting in him such a formal title as would enable him the more conveniently to make an advantageous private sale and conveyance of the slave, without calling on Moore to join in it. There is the fact, generally considered the most material, of great disparity between the real value and the alleged price. That has great additional weight imparted to it by the further fact, that the plaintiff had actually refused nearly double the sum, as the price of the girl, for which, it is supposed, he sold her absolutely to Deberry within a week afterwards. Then comes the additional circumstance, that within three months after the supposed sale the plaintiff assertod an interest in the negro, and Deberry distinctly recognised it. And this is of the more consequence, since it shovvs how far, in Mr. Deberry’s opinion, the sum of $80 21 was below the value of the slave : for there can be. little question,
 
 *198
 
 ■that, if Moore had any interest and fixed on .any price at all, to be asked for the negro, it must have exceeded the sum of $ 150 which he had just refused, and yet, Deberry :thought she was worth considerably more than the plaintiff said he was willing-to take. That circumstance renders more impressive by thefiactof the subsequent appraisement by two judges of the value of .the slave which Deberry procured to be made, and the reasons assigned for it: which go far to corroborate the force of the other facts in their tendency to establish the real purpose of the bill of ■ sale. .Against all these-facts the only thing offered is the .’testimony of the subscribing witness, that Deberry told.him ■that he purchased the ¡negro at the price of $180. He does not state-the period of this declaration. Rut it must have -been after the giving of-the bill of sale, as it is -hardly possible that he should have inserted in it, as the consideration, •a sum less by $100 than the true one. If that be so, it .-confirms, instead -of weakening, the conviction, that the .■transaction was not a purchase — at all events, not at the 'beginning. If it was then a security merely, it is incum-¡bént on the defendant to show when and how it changed ..its character and became a purchase. That consideration brings the answer, next,-under notice. It is always a ‘-very material thing in such cases, when an absolute deed .is sustained by an-answer of .the person, who look it, which • denies directly au agreement for redemption and avers ¡positively a.purchase. Such a deed and answer constitute a.defence, not, indeed, conclusive under all circumstances, but, at the least, not -to be repelled, but by the clearest and most cogent proofs from facts .and circumstances. But .there is not such an answer here, but one, rather, admitting the plaintiff’s interest. The party, himself, being dead .an answer precisely denying the fact was not to be expected-from his executor and legatees. ■ Being without person
 
 *199
 
 al knowledge of the transaction, they cannot undertake to deny the allegations of the bill, even though they be false.
 

 If, therefore; the answer here had said simply, that the defendants had no knowledge on the stibject, perhaps no animadversion could have been made on it: though certainly, an answer denying “knowledge” is less satisfactory in such cases than the fairer statement, that the defendants had neither knowledge of their own, nor any information from- the testator, nor belief, that the deed was not intended as a security, but as an absolute conveyance.
 

 But, while the answer denies- any personal knowledge of the terms on which the testator got the slave, it proceeds to state another transaction between the same parties, as understood by them, and relies on it as a bar to the bill, which in reality implies, that the plaintiff’s claim was once, at least, well founded. For it states, that shortly before the testator’s death, he and the plaintiff had a settlement, as the family understood, and that the defendants believe the plaintiff
 
 then
 
 received full compensation for the slave, although the testator did not say so directly, and although they are unable to- produce any writing to that effect, or otherwise establish it. The fair inference from that statement is, that the testator’s family had, at some time, understood from him, that the slave was not absolutely his, but that she was to be- sold for the benefit of the plaintiff after paying his debt. This inference is the stronger, as the bill charges in detail the great inadequacy of $30,21, as a price, the agreement that the girl should be sold, the wish of the testator to keep her to gratify his wife, and the valuation made at the house of the testator, and the answer takes no notice of any of these allegations, though some of the facts must have been in the personal knowledge of the defendants, and almost certainly the subjects of conversation in the family. The answer, therefore, is not such, an one as
 
 *200
 
 aids the argument derived from the form of the bill of sale; but, on the contrary, it decidedly sustains the statements and proofs made by the plaintiff. No stress is laid on the circumstance, that the word. “ Paid” is written through the plaintiff’s bond to Deberry — on which, after deducting the payment of §224,65, there was due a sum, which, with the money paid to.Long, made, about $80. No stress is laid on it, because it does not appear, which party put it in as proof. If the plaintiff did so, it would not bo material, as it would stand like the money paid to the Constable — se-,. cured merely by the bill of sale. But if it came from the other side, it would strongly sustain the plaintiff, as tending to show it was not paid by the sale of the negro, but only secured. The plaintiff’s case is, however, sufficiently sustained by the other facts ; which seem to the Court to be absolutely incompatible with the notion of an absolute sale. It must be declared, therefore, that the deed was intended but as security, and that the plaintiff' is entitled to redeem, .and the usual enquiries ordered.
 

 Per Cueiam. Decree accordingly.